## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MATTHEW RUCKER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 13-CV-03028-JAR** |
| | ) | |
| JASON GILMORE, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Plaintiff Matthew Rucker, proceeding *pro se* and *in forma pauperis*, filed a complaint against Sergeant Jason Gilmore, Lieutenant Tracy McCulloch, Warden Jeffrey Fewell, Sheriff Don Ash, Sergeant Robert Rome, Major James Eickhoff, and Captain John Russell.[1]  Plaintiff seeks to hold Defendants liable under 42 U.S.C. § 1983 for violating his constitutional rights while Plaintiff was an inmate at the Wyandotte County Detention Center ("Detention Center"). Plaintiff alleges that Defendants retaliated against him for exercising his freedom of speech by subjecting him to inhumane conditions of confinement. This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 38) pursuant to Fed. R. Civ. P. 56(a).[2]  For the reasons explained in detail below, Defendants' motion is granted.

## I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party demonstrates "that there is no

---

[1]Defendant Joseph Reardon was previously dismissed from this action.  *See* Doc. 12.  The Complaint also lists (fnu) Gronite as a Defendant, but waiver of service was never received for this Defendant.

[2]Defendants filed a Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment as required by D. Kan. Rule 56.1(f).  Doc. 44.

genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[3] In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  In attempting to meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[9]

Once the movant has met the initial burden of showing the absence of a genuine issue of

---

[3]Fed. R. Civ. P. 56(a).

[4]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[6]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7]*Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[8]*Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[9]*Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[10]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[11]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[12]

The defendant has the burden of proof on the affirmative defense, and thus in moving for summary judgment on the affirmative defense, "[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted."[13]  Once the defendant makes this initial showing, "the plaintiff must then demonstrate with specificity the existence of a disputed material fact."[14]  If after the evidence is viewed in the light most favorable to the plaintiff, the plaintiff cannot meet this burden, "the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law."[15]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[16]  In responding to a motion for summary judgment, "a party cannot rest on

---

[10]*Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

[11]*Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001).

[12]*Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 670–71); *see Kannady,* 590 F.3d at 1169.

[13]*Hutchinson v. Pfeil,* 105 F.3d 562, 564 (10th Cir.1997).

[14] *Id.*

[15]*Id.*

[16]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[17]  When examining the underlying facts of the case, the Court is cognizant that it may not make credibility determinations or weigh the evidence.[18]

## II.   UNCONTROVERTED FACTS

The following facts are uncontroverted and all reasonable inferences are drawn in favor of Plaintiff as the non-movant.[19]  While Plaintiff was an inmate at the Detention Center he requested an envelope and the addresses for the Call newspaper and the Kansas City Star newspaper on February 4, 2011.  Detention Center Standing Operation Policy F-115 (postcard-only policy) requires that inmates send all non-official mail on 5x7 postcards; mail to the media is not official mail as defined by the policy.  Defendant Fewell denied Plaintiff's request for the addresses, because the Detention Center does not typically provide addresses or other mailing information for prisoners.  Plaintiff then filed an internal grievance with Fewell.

After Plaintiff filed a grievance on February 7, 2011, Fewell responded that "upon review, we will authorize release of address.  We will not pay or provide envelopes.  Media is not privileged."[20]  Also on February 7, 2011, Plaintiff sent a grievance to "Programs."  A response was noted on the Inmate Communication Form ("ICF") that "[p]er administration media addresses may be provided; however, correspondence is not privileged.  Thus,

---

[17]*Conaway v. Smith,* 853 F.2d 789, 794 (10th Cir. 1988).

[18]*Matsushita*, 475 U.S. at 587.

[19]The Court does not consider facts presented by the parties that the record does not support or that are not relevant to the legal issues presented.  Nor does the Court consider legal arguments included in the parties' statements of fact.

[20]*See* Doc. 1–1 at 3.

correspondence will be via postcard only as we will not provide envelopes or pay postage."[21]
Plaintiff then wrote letters to the media in a sealed envelope in violation of the prison's postcard-
only policy.  Defendant Gilmore issued a disciplinary citation to Plaintiff for the violation.
Defendant McCulloch then placed Plaintiff's letters to the media in his central property file to be
returned to him upon his release from the prison.  The letters, however, were not returned to
Plaintiff when he was transferred to another facility.  Plaintiff was found guilty of the violation
and sentenced to disciplinary segregation.

Plaintiff, upset by what he perceived to be a violation of his rights, informed Defendant
Ash that Plaintiff was on a hunger strike.  Ash told Plaintiff that if he wanted non-official mail to
be sent in an envelope he must send the mail to his attorney.  Otherwise, all non-official mail had
to comply with the policy and be sent on a 5x7 postcard.  Plaintiff wrote the media again, this
time complying with the policy.  Plaintiff wrote KCTV-5 on a series of five postcards.  In the
postcards, he complained that the prison had violated his constitutional rights, and he asked the
station for help.  Plaintiff described how several inmates had attempted to commit suicide
because the conditions were so hopeless, and he told the station that if it did not help it would be
covering Plaintiff's death.

Tammy Kiefer, who provides medical and mental care for inmates, placed Plaintiff on
suicide watch because she concluded that Plaintiff had threatened to harm himself.  On
February 16, 2011, Plaintiff was transferred to the medical housing unit (I-Pod 6) for suicide
watch.  Plaintiff, wanting to tell his family and the media about the conditions of his
confinement, requested writing materials.  Defendant Gilmore denied his request for writing

---

[21]Doc. 1–1 at 8.

materials because prisoners on suicide watch are not allowed anything that could be used to harm themselves.  Plaintiff was released from suicide watch and the medical housing unit on February 21, 2011, after being assessed and determined to not be a danger to himself.

The parties dispute what happened after Kiefer placed Plaintiff on suicide watch. Plaintiff claims that he was moved to an unsanitary cell where the mattress was soaked in urine and he was left naked for four hours.  Plaintiff also claims that on February 16, 2011, Defendant Rome forced him to shower shackled in a locked cage shower, that Defendant Russell failed to adequately heat the cells in the winter, and that Defendant Eickhoff denied him access to prison policies.

All Detention Center inmates, including Plaintiff, are provided an Inmate Orientation, Guidelines, and Rules sheet upon arrival, which includes rules regarding the use of mail.[22] On March 4, 2011, Plaintiff filled out an "ICF" stating that he "would like to request a copy of internal policies of this facility," and "would like to know why policies are not published and posted for detainee's viewing."[23]  Defendant Ash responded that he would have Defendant Eickhoff look into the policy issue.[24]  On March 7, 2011, Plaintiff filled out an ICF requesting "policies concerning programs confidentiality, corresponding and mail, confiscation notices, certified grievances policy, disciplinary hearings, segregation policy, phone policy, and any other a detainee should be aware of concerning the procedures of this facility."[25]  Defendant

---

[22]*See* Doc. 39–1 at ¶ 16.  Although Plaintiff mentions that he did not sign the copy of the sheet attached to Defendant's Memorandum, Plaintiff does not dispute this statement of fact.

[23]Doc. 47, at 29.

[24]*Id.*

[25]Doc. 47, at 31.

Fewell responded that they "do not release all policies to inmates."[26]  On March 15, 2011,
Plaintiff again filled out an ICF asking "[w]hat are Confiscation Notices policies?"[27]  Defendant
Fewell responded that there is no such policy.[28]

## III.   DISCUSSION

The Court finds that Defendants are entitled to qualified immunity on each of Plaintiff's
claims.  The only claims remaining in this case are against the Defendants in their individual
capacities.  Individual capacity "suits seek to impose personal liability upon a government
official for actions he takes under color of state law."[29]  Under the doctrine of qualified
immunity, government officials who perform discretionary functions are shielded from
individual liability unless their conduct violates "clearly established statutory or constitutional
rights of which a reasonable person would have known."[30]  The doctrine gives government
officials immunity from lawsuits themselves rather than a mere defense to liability.[31]  "Qualified
immunity gives government officials breathing room to make reasonable but mistaken
judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the
law.'"[32]  Because qualified immunity is the "norm" in private actions against public officials,

---

[26]*Id.*

[27]*See* Doc. 1–1, at 5.  The Court notes that this is the March 15, 2011 ICF that Plaintiff attached to his
Complaint.  Plaintiff attaches the same ICF to his Response to the Motion for Summary Judgment, but that copy has
added the language "What are policies dealing with mail."  *See* Doc. 47 at 30.

[28]Doc. 1–1, at 5.

[29]*Brown v. Kochanowski*, No. 07-3062-SAC, 2012 WL 4127959, *9 (D. Kan. Sept. 19, 2012) (quoting
*Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

[30]*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[31]*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

[32]*Stanton v. Sims*, 134 S. Ct. 3, *5 (2013) (citations omitted).

there is a presumption of immunity when the defense is raised.[33]  When a defendant claims

qualified immunity, the plaintiff bears the "heavy two-part burden" of showing (1) the

defendant's violation of a constitutional right; and (2) that the "infringed right at issue was

clearly established at the time of the allegedly unlawful activity such that a reasonable [official]

would have known that his or her challenged conduct was illegal."[34]  In light of the

circumstances of each case, the court has discretion to determine "which of the two prongs of the

qualified immunity analysis should be addressed first."[35]  The Court will consider each of the

alleged constitutional violations in turn.

**A.    Free Speech**

The Court finds that Plaintiff has failed to show sufficient facts from which a rational

trier of fact could find that Defendants violated his right to freedom of speech.  Incoming and

outgoing mail between a prisoner and an outsider "implicates the guarantee of freedom of speech

under the First Amendment."[36]  But,

> "[t]he constitutional rights that prisoners possess are more limited
> in scope than the constitutional rights held by individuals in
> society at large.  In the First Amendment context, for instance,
> some rights are simply inconsistent with the status of a prisoner or
> with the legitimate penological objectives in the corrections
> system."[37]

---

[33]*Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013) (citation omitted).

[34]*Martinez v. Carr*, 479 F.3d 1292, 1294–95 (10th Cir. 2007) (citations omitted).

[35]*Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[36]*Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996) (citing *Procunier v. Martinez*, 416 U.S. 396, 408 (1974)).

[37]*Shaw v. Murphy*, 532 U.S. 223, 228 (2001) (internal quotations omitted).

Moreover, because of the complex problems associated with prison administration, courts generally give broad deference to prison officials.[38]  Accordingly, a prison regulation that interferes with a prisoner's constitutional right is valid if it is reasonably related to a legitimate penological interest.[39]  To determine the reasonableness of a prison regulation, the court must consider the following factors set forth by the Supreme Court in *Turner v. Safley*:  (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether there are alternative means of exercising the constitutional right that remain available to inmates, (3) the impact accommodating the right would have on guards and other inmates, and (4) the absence of ready alternatives.[40]  "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it."[41]

Liberally construing the Complaint,[42] Plaintiff claims Defendants violated his freedom of speech by denying him the media addresses, refusing to give him writing materials, and failing to return his letters when he was transferred to another facility.

First, Fewell did not violate Plaintiff's freedom of speech by denying him the addresses of the newspapers for a few days because the prison has a legitimate interest in efficient

---

[38]*Id.* at 228 (citing *Procunier*, 416 U.S. at 404); *see also Sandstrom v. Hoffer*, No. 08-3245-SAC, 2011 WL 4553067, at *4 (D. Kan. Sept. 29, 2011) (A prisoner's constitutional claims must be analyzed with due regard for the requirements of prison administration; thus, courts must give great deference to prison officials' decisions concerning the management of correctional facilities.).

[39]*Turner v. Safley*, 482 U.S. 78, 89 (1987).

[40]*Id.* at 89–90.

[41]*Sperry v. Werholtz*, 413 F. App'x 31, 40 (10th Cir. 2011) (quoting *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

[42]Because Plaintiff is a *pro se* litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.  *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

administration.  The prison does not normally provide mailing information to individual prisoners because finding specific addresses upon the request of each prisoner would be overly burdensome.  Still, Fewell ultimately provided Plaintiff with the addresses a few days after his request.  Fewell's delay in providing the addresses did not violate Plaintiff's freedom of speech because the delay was reasonably related to the prison's interest in efficient administration, and Plaintiff was ultimately provided with the addresses.  Plaintiff has not met his burden to disprove the validity of the prison regulation.

Second, Gilmore did not violate Plaintiff's freedom of speech by denying him writing materials.  After writing to KCTV-5 Plaintiff was placed on suicide watch.  Under prison policy, prisoners on suicide watch must be denied access to any materials that may be used to harm themselves.  Writing materials can be used to harm, so Gilmore denied Plaintiff's request.  Gilmore's denial of the request for writing materials while Plaintiff was on suicide watch is reasonably related to the prison's legitimate interest in the safety of prisoners on suicide watch.

Finally, Plaintiff has not shown sufficient facts that McCulloch violated his freedom of speech or mishandled his mail.  Plaintiff alleges that McCulloch destroyed his letters to the media because they were not returned to him when he left the prison.  After Plaintiff violated prison policy by writing letters to the media in sealed envelopes, McCulloch confiscated the letters and put them in Plaintiff's personal property file.  The items in the personal property file are supposed to be returned when a prisoner leaves the facility, but Plaintiff claims the letters were never returned.  Plaintiff has offered no evidence that McCulloch destroyed his letters.  In fact, Plaintiff also alleges that the letters were given to the district attorney, Jennifer Tatum.

Plaintiff attaches to his response an email from Tatum to his attorney in his criminal action.[43] The email is in response to the attorney's email, which states that Plaintiff sent letters to the media, which the jail confiscated, and asks whether or not the letters have been sent to Tatum. Tatum responds: "I do have copies of his recent jail mail.  I will be happy to provide those to you."[44]  The confiscation of the letters is reasonably related to the prison's interest in enforcing the mail policy.  Plaintiff has offered no evidence that the letters were destroyed by McCulloch. Plaintiff's testimony is little more than speculation and bald assertions.  Summary judgment cannot be denied on plaintiff's "speculative hope" of finding some evidence that might prove his claim of mishandling.[45]

To the extent that Plaintiff challenges the prison's postcard-only policy itself, the Court finds that the claim must fail.  First, it appears from Plaintiff's Complaint that such a challenge is only in his official capacity count against Defendant Reardon, who was dismissed from this action.  Even if the Complaint could be liberally construed to assert this claim against the remaining Defendants, the unconstitutionality of a postcard-only prison policy was not clearly established at the time of the alleged unlawful activity.[46]  Liberally construing Plaintiff's Complaint, he challenges the prison's postcard-only policy as a violation of his freedom of speech.  The prison policy requires all non-privileged mail to be sent on postcards.  Assuming,

---

[43]Doc. 47 at 9, 19.

[44]*Id.*

[45]*Brown v. Kochanowski*, No. 07-3062-SAC, 2012 WL 4127959, *11 (D. Kan. Sept. 19, 2012) (citing *T & M Distrib., Inc. v. United States*, 185 F.3d 1279, 1285 (Fed. Cir. 1999) (a plaintiff "cannot defeat summary judgment . . . with just bald assertions and speculation of wrongful conduct.")).

[46]The court notes that Plaintiff is no longer an inmate at the Detention Center, and there is a subsequent class action settlement regarding the Detention Center's postcard-only policy.  *See Jackson v. Ash*, Case No. 13-2504-EFM-JPO, pending in the U. S. District Court for the District of Kansas.

without deciding, that the policy violates Plaintiff's freedom of speech, the Court considers

whether the unconstitutionality of the postcard-only policy is clearly established.  In this circuit a

right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the

clearly established weight of authority from other courts shows that the right must be as the

plaintiff maintains."[47]  There is no case law either from the United States Supreme Court or the

Tenth Circuit that clearly establishes that postcard-only prison policies are unconstitutional.[48]

The Court recognizes that some district courts have found that such policies violate prisoners'

freedom of speech.[49]  The lack of on-point controlling authority or the clearly established weight

of authority from other courts, however, means the right is not clearly established.

Therefore, Defendants are entitled to qualified immunity on Plaintiff's freedom of speech

claim because Plaintiff has failed to show a constitutional violation.  And to the extent Plaintiff

is challenging the postcard-only prison policy, the unconstitutionality of such a policy was not

clearly established at the time of the alleged violation.

### B.      Retaliation

The Court finds that Defendants are entitled to summary judgment on Plaintiff's

retaliation claim.  Prison officials may not retaliate against a prisoner because the prisoner

exercises his constitutional rights.[50]  Generally, a plaintiff must show three elements to establish

a First Amendment retaliation claim:

---

[47]*Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (citation omitted).

[48]*See Cox v. Denning*, No. 12-2571-DJW, 2014 WL 4843951, at *13 (D. Kan. Sept. 29, 2014) (dealing with incoming mail and concluding that the constitutionality of the prison's postcard-only policy was not clearly established) .

[49]*See id.* at *15 (collecting cases).

[50]*Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998).

> "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."[51]

For prisoners claiming retaliation by prison officials, however, the standard is more tailored because "it is not the role of the federal judiciary to scrutinize and interfere with the daily operation of a state prison . . .."[52]  A prisoner is not protected from prison policies and conditions of confinement simply because the prisoner has engaged in protected activity.[53]  Therefore, a prisoner "must prove that 'but for' the retaliatory motive" the incident would not have occurred.[54]  Further, a prisoner claiming retaliation "must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."[55]  Here, Plaintiff claims Defendants retaliated against him by placing him on suicide watch and then by treating him in manner that violated his constitutional rights.

Plaintiff has failed to set forth any evidence that retaliation was the "but for" motive for placing Plaintiff on suicide watch.  Plaintiff wrote several postcards to KCTV-5, implying that he might harm himself.  He mentioned other inmates committing suicide and described the "hopeless" conditions of the prison.  In addition, he told KCTV-5 that if it did not help him, it would be covering his death.  Kiefer, who is not a defendant in this case, was charged with

---

[51] *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

[52] *Williams v. Taylor*, 561 F. App'x 695, 699 (10th Cir. 2014) (quoting *Peterson*, 149 F.3d at 1144).

[53] *Peterson*, 149 F.3d at 1144.

[54] *Id.* (citations omitted).

[55] *Id.* (internal quotation omitted) (emphasis in original).

medical and mental care for inmates.  Kiefer determined that Plaintiff's words were sufficient to warrant suicide watch.  Thus, Plaintiff has failed to show that retaliation was the "but for" motive for placing Plaintiff on suicide watch.

Plaintiff has also failed to show sufficient facts that retaliation was the "but for" motive for any of the conditions complained of by Plaintiff because each was related to the suicide watch.  Plaintiff alleges that Defendants retaliated against him for exercising his freedom of speech by moving him to a new cell, leaving him naked, forcing him to shower in ankle and belly chains, and refusing to give him writing materials.  Prison policy requires Defendants to take extraordinary precautions when a prisoner is on suicide watch.  In fact, prison policy even allows staff to remove a prisoner's normal clothing to replace it with a special gown.  The policy recognizes that a person can harm themselves using ordinary objects such as clothing and writing materials.  Moreover, as the name suggests, prisoners on suicide watch are under constant surveillance.  The parties dispute whether Plaintiff was left naked and forced to shower in chains.  Even assuming Plaintiff's allegations are true, however, Plaintiff has still failed to set forth admissible facts from which a rational trier of fact could find that a retaliatory motive was the "but for" cause for the conditions.  As there is no constitutional violation, Defendants are entitled to qualified immunity on Plaintiff's retaliation claim.

### C.      Conditions of Confinement

The Court finds that Plaintiff has failed to show unconstitutional conditions of confinement.  A prisoner has a constitutional right under the Eighth Amendment to humane conditions of confinement, which requires prison officials to provide "adequate food, clothing, shelter, and medical care"; and to "take reasonable measures to guarantee the safety of the

inmates."[56]  But the Eighth Amendment "does not mandate comfortable prisons."[57]  To make a claim for unconstitutional conditions of confinement under the Eight Amendment a prisoner must show a knowing disregard of "excessive risk to inmate health or safety."[58]  Thus, the analysis has both an objective and a subjective component.[59]  First, "[t]he objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.'"[60]  Second, the subjective component requires a prison official to "have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety."[61]

Plaintiff's claims that Defendants left him naked for four hours, made him shower in ankle and belly chains, and gave him a mattress that was soaked in urine, are not sufficiently serious to constitute a violation of the Eighth Amendment.  Under the objective component, prison conditions can be "restrictive and even harsh" without violating the Constitution.[62]  To determine whether the conditions are sufficiently serious, the court considers not only the severity of the conditions but also their duration.[63]  Indeed, "[a] filthy, overcrowded cell and a

---

[56]*Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotations omitted).

[57]*Id.* at 832 (citation omitted).

[58]*Id.* at 837 (citations omitted).

[59]*Reynolds v. Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001)).

[60]*Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

[61]*Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

[62]*Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted).

[63]*Id.*

15

diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."[64]

Viewing the facts in the light most favorable to Plaintiff, he had to sleep on a soiled mattress (or

the floor) for six days,[65] he was left naked and cold for four hours, and he had to shower in

shackles.  Courts have found, however, that far worse conditions are constitutional.[66]  "Requiring

an inmate who is in disciplinary segregation to shower in handcuffs and ankle shackles does not

evince deliberate indifference to an inmate's health or safety."[67]  Moreover, Plaintiff alleges that

the conditions only lasted a few days and even hours—not weeks or months.  Therefore, the

Court finds that Plaintiff's first three allegations do not rise to the level of cruel and unusual

punishment under the Eighth Amendment.

Plaintiff next claims that the heat in his cell did not work.  A state must provide an

inmate with reasonably adequate ventilation and utilities, including heat.[68]  To determine

whether a allegation of inadequate heat may amount to a constitutional violation the court must

consider "the severity of the temperature, its duration, and whether the inmate has adequate

---

[64]*Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).

[65]Plaintiff's ICF filed on February 18, 2011, suggests that the cell was cleaned on February 17, or at least prior to Plaintiff filling out the ICF on the 18th.  Plaintiff states in the ICF that "cell was not cleaned until 17-11, Co. Kronite will verify.  *See* Doc. 1–1, at 6.  Once again, the Court notes that the same ICF that is attached to his Complaint is also attached to his response, but with alterations.  Plaintiff attaches the February 18th ICF to his response, but has "until 17-11" scratched out.  *See* Doc. 47 at 24.

[66]*Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988) (five day stay in "filthy, roach-infested cell" was constitutional); *Whitnack v. Douglas Cnty.*, 16 F.3d 954, 958 (8th Cir. 1994) (filthy cell with vomit and human waste not unconstitutional because conditions only lasted for 24 hours).

[67]*Sanders v. Hopkins*, 131 F.3d 152, *2 (10th Cir. 1997) (citing *Branham v. Meachum*, 77 F.3d 626, 631 (2nd Cir. 1996) (requiring an inmate on "lockdown" to shower while wearing leg irons does not state a claim under the Eighth Amendment.)).

[68]*Mitchell v. Maynard*, 80 F.3d 1433, 1442 (citing *Ramos v. Lamm*, 639 F.2d 559, 568 (10th Cir. 1980), *cert. denied*, 450 U.S. 1041 (1981)).

alternatives to protect himself from the cold, along with other prison conditions."[69]  "[T]he fact that inmates need to bundle up in a coat and blanket does not necessarily mean that the prison conditions are unconstitutional."[70]

The Court finds that Plaintiff has failed to show that the inadequate heat amounted to a constitutional violation.  Plaintiff claims there was no heat for most of the winter.  Indeed, Plaintiff complained about the inadequate heat in December and again in March.  But Plaintiff makes no specific allegations as to the severity of the temperature.  And Plaintiff only alleges that he was unable to protect himself from the cold for a period of four hours.  Plaintiff has not offered any evidence that the lack of heat was sufficiently serious to constitute a constitutional violation.  The Court finds that Plaintiff's claim fails on the objective component because he has not alleged conditions that were sufficiently serious to deprive him of the minimal civilized measure of life's necessities.

Moreover, even if the conditions of confinement were sufficiently serious to meet the objective component, Plaintiff has offered no evidence that Defendants acted with a culpable state of mind.  The subjective component is not satisfied "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[71]  Even prison officials with actual knowledge of a substantial risk to inmate health or safety may be free from liability "if they responded reasonably to the

---

[69]*Skelton v. Bruce*, 409 F. App'x 199, 204 (10th Cir. 2010).

[70]*Id.* (citing *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997).

[71]*Skelton*, 409 F. App'x at 203 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

risk, even if the harm ultimately was not averted."[72]  Plaintiff has failed to show facts from which a rational trier of fact could find conditions of confinement that violate the Eight Amendment and Defendants are entitled to qualified immunity.

### D.    Equal Protection

The Court finds that Plaintiff has failed to set forth facts sufficient to show an Equal Protection violation.  Liberally construing the Complaint, as the Court must, Plaintiff claims Defendant Eickhoff violated his Equal Protection rights by allowing other prisoners access to certain prison policies but denying Plaintiff the same access.  A person's Equal Protection rights are implicated when the government treats him differently than it treats similarly situated individuals.[73]  Because Plaintiff does not allege class membership, the Court will proceed under the general framework for class-of-one claims.  However, the Court must proceed with caution, "recognizing that class-of-one claims pose a danger of 'turning even quotidian exercises of government discretion into constitutional causes.'"[74]

A class-of-one plaintiff must proceed through essentially the same two steps as a plaintiff alleging a class-based claim.[75]  First, Plaintiff must show that he (as opposed to a class in which he is a member) was "intentionally treated differently from others similarly situated."[76]  "Second, when intentional discrimination is shown to exist the plaintiff must prove there is no "rational

---

[72]*Id.* (quoting *Farmer*, 511 U.S. at 844).

[73]*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[74]*Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631 (10th Cir. 2014) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)).

[75]*SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012).

[76]*Id.* (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

basis" for it."[77]

Thus, a class-of-one plaintiff must first establish that others "similarly situated *in every material respect* were treated differently."[78]  The allegations necessary to establish this level of similarity will vary depending on the nature of the case, and "[t]he more variables involved in the government action at issue, the more specifics the plaintiff will need to allege to allow for meaningful comparison between the plaintiff's (negative) experience and the (positive) experiences of others."[79]  Plaintiff has failed to allege with any specificity that the inmates receiving copies of policies are similar to Plaintiff.  Other than alleging that they were inmates of the Detention Center at some point in time, Plaintiff has not alleged that they were similarly situated to Plaintiff in any other respect, let alone "every material respect."  Class-of-one equal protection claims are viewed with caution and it is "crucial that the plaintiff asserting such a claim meet his "substantial burden" of demonstrating that there are others "similarly situated in all material respects" who have been treated differently."[80]  Because "it is exceedingly difficult to demonstrate that any difference in treatment is not attributable to a quirk of the plaintiff or even to the fallibility of administrators whose inconsistency is as random as it is inevitable . . . courts have imposed exacting burdens on plaintiffs to demonstrate similarity in class-of-one cases."[81]

---

[77]*Id.* (citation omitted).

[78]*Haik*, 567 F. App'x at 632 (citing *Kan. Penn Gaming*, 656 F.3d at 1216)) (emphasis in original).

[79]*Id.* (citation omitted).

[80]*Felts v. City of Dodge City, Kan.*, 499 F. App'x 750, 752 (10th Cir. 2012) (citing *Kan. Penn Gaming*, 656 F.3d at 1216–17)).

[81]*Shifrin v. Toll*, 483 F. App'x 446, 449 (10th Cir. 2012) (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1213 (10th Cir. 2006)).

All Detention Center inmates, including Plaintiff, are provided an Inmate Orientation, Guidelines, and Rules sheet upon arrival, which includes rules regarding the use of mail. Plaintiff does not allege that the denial of his request for copies of policies rendered him unable to exhaust his administrative remedies, that he was unaware of the postcard-only policy before he was disciplined for violating it, or that he was somehow denied access to the courts.[82]

Plaintiff has failed to allege facts from which a rational trier of fact could find a discriminatory purpose.[83]  Because "purposeful discrimination is an essential element of an equal protection claim," Plaintiff's claim must fail.[84]  Summary judgment must be granted where a plaintiff cannot establish that he was treated differently from other persons whose situations were identical in all material respects and that the difference in treatment was objectively irrational and abusive.[85]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Summary Judgment (Doc. 38) pursuant to Fed. R. Civ. P. 56(a) is **granted**.

**IT IS SO ORDERED.**

Dated: February 6, 2015

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[82]*See Ard v. Hanks*, 67 F. App'x 946, 949 (7th Cir. 2003) (finding no due process violation where prisoner was denied copy of jail rule book, because he was disciplined for an act commonly known to be unlawful).

[83]*See SECSYS*, 666 F.3d at 689 (noting that the emphasis on the absence of similarly situated individuals treated differently is simply a way of saying that the plaintiff failed at the first step to prove intentional discrimination).

[84]*Id.* (citation omitted).

[85]*See Penner v. City of Topeka, Kan.*, 437 F. App'x 751, 754 (10th Cir. 2011).